## States Oil Company of Maine v. Dayton Pump and Manufacturing Company.

(Decided May 4, 1926.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Reformation of Instruments—Reformation of Contract to Purchase Pumps, Signed, Witnessed and Acknowledged, and Uncomplained of for 2½ Years, by Insertion of Provision for Repair, Held Not Warranted by Evidence.—Where contract for purchase of oil pumps was signed, witnessed and acknowledged by president of defendant company, and not complained of for 2½ years, its reformation, on testimony of employes of defendant company, that provision obligating plaintiff to repair pumps was omitted by mistake, held not warranted.

2. Reformation of Instruments—Delay of 2½ Years in Claiming Reformation of Contract, After Notice to Defendant that it did Not Contain Omitted Provision, Held to Bar Reformation.—Failure of defendant for 2½ years to claim that provision for repair of oil pumps purchased by defendant was omitted from contract after plaintiff had refused to repair, putting defendant on notice that contract contained no such provision, held to bar reformation of contract for laches.

CHARLES T. RAY for appellant.

GIFFORD & STEINFELD for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

This suit was commenced by appellee, Dayton Pump and Manufacturing Company, against appellant, States Oil Company of Maine, to recover $921.69, alleged to be the balance due upon certain oil pumps sold by the pump company to the oil company by written contract dated June 21, 1922, and which contract was made a part of the petition. The writing is on an order blank of the Dayton

Pump & Manufacturing Company, and, after reciting the articles sold, in part says:

> "In consideration of the above, I, the undersigned agree to pay to the Dayton Pump & Manufacturing Company twenty-three hundred, seventy dollars, as follows: $2,370.00 in 18 monthly payments of $131.66. It is agreed that the title to said property or any part thereof shall remain in the Dayton Pump & Manufacturing Company until the full purchase price, or any judgment for same, is paid in full, and provided whatever manner said pump and equipment shall have become attached to the real estate described and known as State Oil Company, River road, Louisville, Kentucky, it shall not become a fixture or part of said real estate."

This writing was signed by the States Oil Company of Maine, by R. E. Gordon, president, and attested by R. Stirling Sanford, agent of the pump company.

The oil company defended on the ground that the pump company had orally agreed to make certain repairs on the pumps but had failed to do so, to the damage of the oil company in the sum of $1,000.00; that through fraud on the part of plaintiff and mutual mistake of the parties this part of the contract was omitted from the writing. A reformation of the contract was sought. Judgment went for the pump company, and the oil company appeals. A question of fact was presented. Gordon, the agent of the oil company, and his stenographer, testified that Sanford, the agent of the pump company who acted for it in the making of the contract with Gordon for the oil company, agreed to have the pumps repaired and put in condition and that this was to be done before the contract of purchase was to become effective, and these terms were to be put into the written contract either by redrafting it or by inserting the necessary words in the contract from which we have copied above. Sanford for the pump company denied that any such agreement was entered into between the parties and asserted that the entire contract was embraced in the writing filed with the petition. The chancellor in discussing the evidence said:

> "The two witnesses above referred to as supporting defendant's cause are Hays, sales manager for defendant, and Mrs. Whitman (formerly Miss

Cain) who was in defendant's employ when as notary public she took the acknowledgment of the execution of the contract sued on. Both say that Sanford told Gordon that he would either have a new contract written or would insert the repair provision in the paper that was then being signed.

"This is difficult to believe when Gordon himself could have closed the whole matter by writing half a dozen words in the paper before him. Two persons were called in to witness the signature of Gordon, a notary public was procured to take an acknowledgment of its execution as the act of defendant corporation, and yet, these unusual formalities, I am asked to believe, were in connection with the signing of a paper which was a mere memorandum which was to have no efficacy and was to be discarded when the true contract was executed."

Further along in his opinion the chancellor observed:

"There is another consideration which I think must weigh against defendant's prayer for reformation and that is the late hour at which the application comes. Two and a half years after the contract was made defendant for the first time puts forward the claim that there was a mistake. Defendant undertakes to explain this delay by saying (counterclaim, pp. 5 and 6) that it thought plaintiff had inserted the repair provision in the writing, which has remained in plaintiff's possession since its execution. But this explanation, if true, does not acquit defendant of negligence and laches. It was its duty to complete the writing before signing and, failing this, it was its duty to see that the correction, which it says was promised by Sanford, was made. If Gordon did not know that the correction had been made, he should have known it. The persistent refusal of plaintiff to comply was enough to put him on notice. Indeed, the contention seems to me to be in the face of all probability. Nothing could be more inconsistent with experience than that a man should solemnly execute a paper from which an important provision was omitted upon an understanding that his adversary would subsequently insert that provision, when that provision could have been inserted in six or eight words when the paper was signed.

"The evidence is far from 'full and decisive' and the prayer for reformation must be denied."

The finding of the chancellor accords with the weight of the evidence and his reasoning appears to be sound. Adopting the finding of fact of the chancellor we can but affirm the judgment.

Judgment affirmed.